**T'AI CORPORATION, a Colorado Corporation, Plaintiff-Appellant,**

**v.**

**KALSØ SYSTEMET, INC., a Delaware Corporation, Defendant-Appellee.**

**No. 76–1543.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 19, 1977.

Decided Dec. 19, 1977.

Gordon G. Greiner, Denver, Colo. (Jeffrey C. Pond, Holland & Hart, Denver, Colo., on brief), for plaintiff-appellant.

Burton S. Cooper, New York City (of Shatzkin, Cooper, Labaton, Rudoff & Bandler, New York City, and Benjamin F. Stapleton, Denver, Colo., William G. Imig, Salida, Colo., Edward O. Byrne, New York City, and Michael Touff of Ireland, Stapleton, Pryor & Holmes Professional Corporation, Denver, Colo., on brief), for defendant-appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

McWILLIAMS, Circuit Judge.

This is essentially an action for breach of an oral contract which was expanded to include a claim for damages based on an alleged violation of section 1 of the Sherman Act, 15 U.S.C. § 1. By way of relief the plaintiff sought money damages, specific enforcement, injunction and declaratory judgment. In a non-jury trial, the trial judge found that there was no contract between the parties, and that there had been no violation of the Sherman Act. Accordingly, judgment was entered for the defendant. Our study of the matter leads us to conclude that the trial judge's findings were not "clearly erroneous" and that he did not misinterpret or misapply the applicable law. Thus, we affirm.

T'ai Corporation, the plaintiff-appellant, is a Colorado Corporation with a store located in Boulder, Colorado. Anthony G. Chirikos and Richard Polk are the principal owners of T'ai. Kalsø Systemet, Inc., the defendant-appellee, is a Delaware corporation with offices in New York City. Raymond Jacobs is the president of Kalsø. Kalsø holds certain patent rights on a so-called "Earth Shoe." An Earth Shoe is a shoe with a so-called "negative heel" design whereby the heel is lowered approximately one and one-half inches below the toe. Kalsø was manufacturing and selling the Earth Shoe, both at wholesale and retail, at several locations within the United States.

Chirikos and Polk were interested in obtaining a franchise for the retailing of Earth Shoes in Colorado. Through a mutual friend, they made contact with Raymond Jacobs, the president of Kalsø, and a meeting involving Chirikos, Polk and Jacobs was held in New York City on January 29, 1972. The present litigation results from a dispute over what transpired at this two-hour meeting. It is T'ai's position that, as a result of this meeting, an oral contract was entered into whereby Chirikos and Polk, who later formed the T'ai Corporation, were granted an exclusive franchise to sell Earth Shoes at retail in the state of Colorado. According to Chirikos and Polk, the contract was of unlimited duration, subject only to their continuing effort to adequately develop the market. A restraint imposed on T'ai by Kalsø, according to Chirikos and Polk, was that the former could not solicit mail order sales outside the state of Colorado.

It is Kalsø's basic position that the meeting in New York City on January 29, 1972, was simply preliminary negotiation and that no contract between the parties was entered into on that date or at any time thereafter. Jacobs' testimony at trial was diametrically opposed to that of Chirikos and Polk. In this regard, Jacobs' testimony can best be summed up by his statement that when Chirikos and Polk left the New York meeting, he didn't know if he would ever see them again.

Shortly after the January 29, 1972, meeting, Chirikos and Polk came to Denver, Colorado from Chicago, Illinois, where they had been most recently residing. Once in Denver they began to place orders with Kalsø for Earth Shoes. Initially, they sold the shoes in the Denver area from their home on a word-of-mouth basis, occasionally "setting up shop" in a shopping center area by selling shoes from the rear of a van. They later formed the T'ai Corporation and, upon being assured that Kalsø could meet their orders, eventually opened a store in Boulder, Colorado. Later T'ai decided to open a store in Denver, Colorado and sought assurance from Kalsø that it could supply a Denver outlet in addition to the Boulder store. It was at this point in time that a dispute arose between the parties. Kalsø refused to promise delivery of a sufficient number of shoes to permit T'ai to open a Denver store, and, on the contrary, indicated that it proposed to itself open a "company store" in Denver. In this regard,

---

\* Of the U. S. Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

it was T'ai's position that, as a result of the January 29 meeting, it had an exclusive franchise for the entire state of Colorado, and thereby had "territorial rights" to Denver.

It was in this general setting that T'ai brought the present action against Kalsø. One claim was based on breach of the oral contract allegedly entered into on January 29, 1972. Another claim was based on alleged restraints in violation of 15 U.S.C. § 1. The restraints relied on were the prohibition allegedly imposed by Kalsø that T'ai not solicit mail order sales outside of Colorado, and Kalsø's refusal to permit T'ai to open a Denver store outlet.

As indicated, trial of this matter was to the court, sitting without a jury. After a protracted trial, the trial judge found that there was no oral contract between the parties, and that there had been no violation of section 1 of the Sherman Act. In connection with his finding of "no contract," the trial judge made the following findings:

> The evidence fails to establish the existence of such a contract. There is no doubt that Mr. Polk and Mr. Chirikos left the January 29, 1972 meeting with reasonable expectations that a business relationship would develop between them and Mr. Jacobs. Such an expectation is far different from a meeting of the minds and an exchange of mutual promises sufficient to constitute an enforceable contract. As of January 29, 1972 T'ai corporation was not yet in existence. Moreover, the testimony of both Polk and Chirikos indicates that they were not then aware of the form of business entity being used by Mr. Jacobs. It is difficult to find an agreement without a definition of the parties to it.

> There is nothing in evidence to indicate that on January 29, 1972, there was any mutual understanding of the prices at which shoes would be supplied, the credit terms for sales, shipping terms, guaranteed quantities or minimum sales. Without agreement upon such fundamental terms there can be no basis for measuring the performances required and certainly

this court could not direct such uncertain performance. The reality of the plaintiff's request for relief is that this court is being asked to write a contract for these parties and that is not an appropriate role for the court.

■ The January 29 meeting occurred in New York City, and it is agreed that New York contract law applies. The New York law of contracts requires a meeting of the mind on all essential terms of a contract. *Ansorge v. Kane*, 244 N.Y. 395, 155 N.E. 683, 684 (1927). A term is "essential" if it seriously affects the rights and obligations of the parties. *Ginsberg Machine Co., Inc. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir. 1965). In a sales contract, quantity is an essential term. *King v. Krischer Mfg. Co., Inc.*, 220 App.Div. 584, 222 N.Y.S. 66, 68 (1927). To attempt to fix quantity by such terms as "fair share" is too indefinite. *Varney v. Ditmars*, 217 N.Y. 223, 111 N.E. 822, 824 (1916).

■ Applying the foregoing legal principles to the instant case, we conclude that the trial judge did not err in refusing to hold that an enforceable oral contract came out of the January 29 meeting. Furthermore, we agree with the trial judge's comment that the conduct of the parties subsequent to January 29, 1972, was "inconsistent with a binding commitment to develop a market for the entire state of Colorado." The fact that subsequent to January 29, 1972, T'ai began to purchase Earth Shoes from Kalsø, and did so thereafter on a continuing basis, does not establish that in the January 29 meeting T'ai was granted an exclusive franchise to retail Earth Shoes in Colorado in perpetuity. In short, in our view the issue as to whether there was an oral contract entered into on January 29, 1972, presents a question of fact. The trial judge, in effect, chose to believe Jacobs' version as to what transpired. Such was the trial judge's prerogative. His findings are not clearly erroneous, and on the contrary are amply supported by the record. On appeal, then, we are bound by his finding that there was no contract.

The trial judge's finding that no contract was entered into by the parties in the Janu-

ary 29, meeting takes considerable steam out of T'ai's claim that there were violations of section 1 of the Sherman Act on the part of Kalsø. This is so because the restraints relied on were allegedly essential elements of a contract that the trial judge found did not exist. Specifically, T'ai asserted that Kalsø imposed a mail order restriction which precluded it from soliciting mail order sales outside Colorado. The trial judge in his findings recognized that Jacobs was interested in preserving a national mail order market for Kalsø and in reserving territories for its dealers. However, the trial judge noted that there was no evidence of the imposition of sanctions for extraterritorial sales and concluded that there could be no violation of the *per se* rule of *United States v. Arnold Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967) "without an indication that resale restrictions were firmly and resolutely enforced." In *Colorado Pump & Supply Co. v. Febco, Inc.,* 472 F.2d 637, 639 (10th Cir. 1973) we held that a *per se* violation under *Schwinn* was predicated on the "firm and resolute" insistence by the manufacturer-supplier that the restraint placed on its dealer be complied with. We, like the trial court, fail to find any "firm and resolute" insistence on the part of Kalsø.

■ One aspect of T'ai's claim for violation of the antitrust laws is the refusal of Kalsø to supply T'ai with sufficient shoes to enable it to open a Denver store. This, in a sense, presupposes that T'ai had an exclusive franchise for the entire state of Colorado. The trial judge found that T'ai as a matter of fact had no such franchise. The trial judge observed that this was not an instance where T'ai had moved all or a part of its Boulder inventory to a Denver location and sold those shoes in Denver, with Kalsø retaliating by refusing to resupply the Boulder store. Rather, in the trial judge's view of the matter, this was a case where Kalsø simply refused to enter into a contract with T'ai for a future supply of shoes to be sold at a new location where T'ai had no territorial rights. Such, according to the trial judge, cannot form the basis for an antitrust damage claim. We agree.

■ On appeal T'ai attempts to raise two matters which, according to Kalsø, were not really presented to the trial court. In this regard, T'ai asserts: (1) that if no contract was entered into in the January 29 meeting, one was entered into in May 1972 in telephone conversations preceding the opening by T'ai of its Boulder store; and (2) that the restraints imposed by Kalsø on T'ai were in reality "horizontal" restrictions, not "vertical." The general rule is that a party may not lose in a trial court on one theory and secure a reversal on appeal based on another and different theory. *See, International Union of Operating Engineers, Local 953 v. Central National Life Insurance Co.,* 501 F.2d 902, 907 (10th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 397 (1975); *Eureka-Carlisle Co. v. Rottman,* 398 F.2d 1015, 1019 (10th Cir. 1968); *Schenfeld v. Norton Co.,* 391 F.2d 420, 424 (10th Cir. 1968).

We note that T'ai in its reply brief takes issue with Kalsø's assertion that the matters just referred to were not actually presented to the trial court. Be that as it may, in our view the trial judge committed no error in failing to find a contract between the parties as a result of their telephone conversations in May 1972, and in treating the alleged restraints as being vertical in nature.

Judgment affirmed.