**Louis F. CAVIC, Jr.,**
**Plaintiff-Appellee/Cross-Appellant,**

v.

**PIONEER ASTRO INDUSTRIES, INC.,**
**Defendant-Appellant/Cross-Appellee.**

Nos. 85–1318, 85–1339.

United States Court of Appeals,
Tenth Circuit.

April 16, 1987.

Rehearing Denied May 28, 1987.

Robert B. Warren of Warren, Mundt, Martin & O'Dowd, P.C., Colorado Springs, Colo., for defendant-appellant/cross-appellee.

J. Richard McEachern (Peter M. Nemkov of Boris, Klueger & Nemkov, P.C., Denver, Colo., with him on brief), of Guilfoil, Petzall & Shoemake, St. Louis, Mo., for plaintiff-appellee/cross-appellant.

Before BARRETT, McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from a district court decision awarding Louis Cavic unpaid sales commissions, prejudgment and post-judgment interest, and costs, but denying him attorneys' fees and penalties. For the reasons set forth below, we affirm the district court.

On February 1, 1974, Cavic agreed to act as manufacturing representative for the predecessor to Pioneer Astro Industries (Pioneer),[1] a custom machining shop. The agreement gave Cavic the "exclusive right

---

1. Cavic entered into the agreement with Precision Products Division of Pikes Peak Air Service. This company eventually acquired the name Pioneer Astro Industries. Although the agreement lists Precision Products as a party, for simplicity's sake we will refer only to Pioneer in this order.

to solicit orders" in Missouri, Illinois and Kansas and from specifically listed customers. The agreement further provided for a percentage commission to be paid Cavic for all orders that he obtained which were accepted by Pioneer. Finally, it provided that upon termination of the agreement "the Corporation [Pioneer] shall continue to pay commissions on all orders received and accepted prior to the effective termination date thereof even though shipments are made after said date of termination, until completion of the order." Termination was "effective" after 90 days notice by either party.

During Cavic's employment, Pioneer entered into several "purchase agreements" with Varian Associates (Varian), General Electric, and Applied Radiation (Siemens). Also during this time Pioneer made sales to the United States Army and Fiat-Allis.

On July 3, 1979, Pioneer terminated the agreement with Cavic effective September 30, 1979. After his termination, Cavic received and cashed commission checks totaling approximately $20,000. Cavic then received a "final" commission check bearing a restrictive endorsement. Cavic did not cash this check. Instead, he called several of Pioneer's customers and learned of several transactions which he felt warranted payment of additional commissions.

Cavic sued Pioneer for unpaid commissions, alleging breach of contract and, alternatively, unjust enrichment. The trial court found the "purchase agreements" between Pioneer and Varian, General Electric, and Siemens were long term requirements contracts which were procured by Cavic. Thus, Pioneer owed Cavic commissions generated by any sales made pursuant to those contracts. In addition, the court awarded Cavic commissions on sales to Fiat-Allis but denied commissions on sales to the United States Army[2]. The court also awarded Cavic prejudgment and postjudgment interest and costs but denied him attorneys' fees and statutory penalties sought under Colorado's wage laws.

Pioneer now appeals alleging that the "purchase agreements" were erroneously construed to be long term requirements contracts, and that Pioneer owed Cavic nothing after his effective termination. Cavic's cross-appeal argues that he is entitled to commissions on the sales to the Army as well as attorneys' fees and penalties.

I. Varian, General Electric and Siemens Agreements.

A.

■ The parties dispute whether Pioneer entered into binding contracts with Varian, General Electric, and Siemens when the original purchase agreements were signed.

Pioneer argues now, as it did at trial, that the "purchase agreements" between Pioneer and Varian, General Electric, and Siemens were intended to be "pricing agreements" and not binding contracts upon which Cavic would be due commissions. The agreements, Pioneer asserts, merely establish a firm price base to guide future contracts for as long as three years. Thus, Pioneer argues, the individual purchase orders placed pursuant to these pricing agreements were the binding contracts from which Cavic's commissions should be determined. Any purchase order received after Cavic's termination, according to Pioneer, would not trigger a commission.

To the contrary, the trial court found these agreements were intended to be long term requirements contracts, specifically authorized by and binding under Article 2 of Colorado's version of the Uniform Commercial Code. Thus, any purchase orders written pursuant to these contracts, even though received after Cavic's termination, generated commissions to Cavic.

When the existence of a contract depends upon the intent of the parties, the issue is one of fact reserved for the trier of fact. *Acree v. Minolta Corp.*, 748 F.2d 1382,

---

2. Cavic was also awarded commissions on sales to Marvel Schebler and Gates Learjet, but they are not contested in this appeal. Cavic was denied commissions on a contract that Pioneer had executed with the United States Navy. Although Pioneer argues the Navy contract on appeal, Cavic has expressly waived any argument on the issue.

1387 (10th Cir.1984). Furthermore, while we are not limited to a clearly erroneous standard of review regarding an unambiguous written agreement, when the trial court resorts to extrinsic testimony to ascertain the meaning of the contractual terms, the interpretation is factual. *Carpenters & Millwrights Health Benefit Trust Fund v. Gardineer Dry Walling Co.*, 573 F.2d 1172, 1173 (10th Cir.1978). *See also Southwestern Stationery & Bank Supply, Inc. v. Harris Corp.*, 624 F.2d 168, 170 (10th Cir.1980). When the district court's interpretation is aided by extrinsic evidence it cannot be set aside unless clearly erroneous. *Carpenters*, 573 F.2d at 1173.

The trial court's conclusion that the agreements were intended to be long term requirements contracts specifically relied upon evidence of the intent of the parties to the agreements. The court heard testimony from two witnesses who stated that the custom of Pioneer, and the machining industry as a whole, was to secure business through long term contracts. Additionally, the court noted the president of Pioneer himself labeled the agreements "long term contractual relationships" in a letter to company stockholders. Based upon this evidence, and according to the standards above, we hold that the trial court did not err.

### B.

Pioneer also argues that Cavic is not entitled to any further commissions on orders from Varian, General Electric or Siemens because Cavic's employment contract limits payment of commissions to orders "received and accepted" prior to his termination. Since the commissions Cavic claims were computed from purchase orders received or accepted after Cavic was fired, Pioneer argues, the clear language of the agreement should bar his recovery.[3]

■ This argument necessarily relies on a finding that the agreements between Pioneer and Varian, General Electric and Sie-

mens were not long term requirements contracts. But, as the trial court has found, this is not the case. As binding, long term requirements contracts, any purchase orders made pursuant to those contracts triggered commissions to Cavic, the representative responsible for procuring the underlying agreements.

■ Further, Pioneer argues that the original agreement between Pioneer and Varian expired by its own terms in 1978 and that therefore Cavic is not entitled to commissions from any sales to Varian after 1978. The trial court found that despite the expiration of the Varian contract in 1978, the parties continued to perform pursuant to an oral agreement based upon the terms of the original contract. This finding is supported by the record and is not clearly erroneous. *See T'ai Corp. v. Kalso Systemet, Inc.*, 568 F.2d 145, 147 (10th Cir.1977).

### II. Fiat-Allis Agreement.

#### A.

■ Pioneer argues that it has already paid commissions based on purchase orders from Fiat-Allis. Pioneer relies on the testimony of Regina Deich, the former in-house accountant for Pioneer, who said: "I can recall looking at Fiat-Allis and I believe that most of the commissions, if not all, were paid." Later, when asked the location of any documents that would substantiate this testimony, Ms. Deich replied: "When I left Pioneer, they were in the files and records at Pioneer Astro Industries." None of this documentation, if it exists, is in the record to show whether the commissions were or were not actually paid. By contrast, Cavic presented purchase orders which clearly showed his right to receive commissions. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Accordingly,

---

**3.** Pioneer separately asserts that if Cavic is owed anything, it is only on those orders which were dated prior to Cavic's effective termination.

Brief of Appellant at 42. As this argument is the corollary to the argument now being addressed, we will refrain from discussing it.

the trial court did not err by accepting Cavic's version regarding this issue.

### B.

Alternatively, Pioneer contends that Cavic's claims to the Fiat-Allis commissions are barred by the applicable Colorado statutes of limitation.

The statute of limitations issue was first raised by Pioneer as an affirmative defense in its answer. The issue was again listed in the pretrial order and was read aloud by the trial court at the start of trial as one of several legal theories upon which Pioneer would rely. The issue was never mentioned again until after trial. Pioneer neither argued the issue nor presented evidence to advance any theory as to why the statute of limitations had run. And, not surprisingly, the trial court made no ruling on the question in its findings and conclusions.

It is a general rule that a federal appellate court will not consider an issue "which was not presented to, considered or decided by the trial court." *Eureka-Carlisle Co. v. Rottman*, 398 F.2d 1015, 1019 (10th Cir. 1968). *See also Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 (10th Cir.1983). The rule may be relaxed when the issue is one of law and the proper resolution is beyond doubt or where injustice might otherwise result. *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Further, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Id.*

■ We find that Pioneer did not sufficiently advance its argument before the trial court and that therefore this argument was not properly raised below. Accordingly, we will not consider the issue now, on appeal. Since Pioneer has still not offered any evidence or theory on which to overturn the lower ruling based on statute of limitation grounds, we find no injustice in this decision.

■ Additionally, the proper resolution of the issue is not "beyond doubt". We have found only sparse Colorado authority on whether the "discovery rule" is applicable to when a cause of action "accrues" under the statute. Moreover, a holding as a matter of law that the discovery rule is applicable to this statute would then require review of certain facts which were unlitigated and unresolved at trial. Given these factors, an exception to the general rule is inappropriate in this case.

### III. United States Army Agreement.

■ Cavic argues on cross-appeal that he is entitled to commissions from products sold to the United States Army because the contract originated in part of his exclusive territory. Cavic relies on several documents on file with Pioneer which listed the Army contract "issuer" as the Army Commander in Illinois. Cavic also notes two specific purchase orders on file with Pioneer that list the "customer" as the U.S. Army Command in Illinois.

The trial court's determination that Cavic is not owed commissions on the Army contract is supported by sufficient evidence. Most of the documents Cavic refers to also list the contract administrator as the Army Commander in Colorado, outside of Cavic's exclusive territory. Pioneer's president, Daniel League, testified that Pioneer was on a governmental "bidders list" from which Pioneer received requests for bids from various governmental agencies, including the Army. Mr. League also testified that although some manufactured parts were sent to Illinois, all of Pioneer's dealings with the Army were done in Colorado. William Steed, head of Pioneer's manufacturing section, testified that he had personally dealt with the Army on the contract in question, and that all negotiations were performed in Colorado. Therefore, the district court had ample evidence to find that the contract was neither solicited by Cavic nor linked to his exclusive territory. In light of this evidence, the court's finding was not clearly erroneous and therefore will not be disturbed on review.

## IV. Attorneys' Fees and Penalties.

 Cavic argues that the trial court erred by not awarding a fifty percent penalty for unpaid wages under Colo.Rev.Stat. § 8–4–104, and for attorneys' fees under Colo.Rev.Stat. § 8–4–114. The trial court refused to award Cavic penalties or fees because Cavic was an independent contractor and therefore not a person protected by either statute. We agree.

Section 8–4–104 makes an employer liable to an employee for a fifty percent penalty on all wages withheld, if that employer refuses to pay wages without a good faith legal justification. Section 8–4–114 provides for attorneys' fees to the prevailing party when an employee files suit for recovery of wages. Section 8–4–101(5) defines "employee" as "any person ... performing labor or services for the benefit of an employer in which the employer may command when, where and how much labor or services shall be performed."

Section 8–4–101(5) was recently discussed in *Hyland v. Pikes Peak Capital Corp.*, 714 P.2d 914 (Colo.Ct.App.1985). In *Hyland,* the court found that a real estate salesman was not a corporate employee for purposes of the statute where there was sufficient evidence that the salesman's activities were not controlled by the corporation. *Id.* at 916. Similarly, in the case at bar, there is sufficient evidence on the record that Cavic was not an "employee" under § 8–4–101. Cavic was Pioneer's sole manufacturing representative and was free to solicit orders in any manner, at any time, from anyone listed by the 1974 agreement or in his three exclusive states. He paid his own travel and business expenses. Further, the agreement between Pioneer and Cavic specifically noted that Cavic was an independent contractor. Because Cavic was not an employee, the trial court did not err in denying either penalties or attorneys' fees under Colorado's wage laws.

## V. Prejudgment Interest.

 Pioneer contends that the trial court erred in awarding and computing prejudgment interest. Regarding the propriety of awarding the interest Pioneer makes only the assertion that "the defendant does not feel that prejudgment interest is awardable." Brief of Appellant at 46. Clearly, Colorado recognizes the right to prejudgment interest in appropriate cases. Colo. Rev.Stat. § 5–12–102. *See also Denver Ass'n for Retarded Children, Inc. v. School Dist. No. 1*, 188 Colo. 310, 320, 535 P.2d 200, 206 (1975). However, without any rationale or authority to support Pioneer's declaration, we will not speculate as to what its argument, if any, might be.

Pioneer does argue that the interest was erroneously calculated from dates found on the purchase orders. Pioneer contends that the trial court should have computed the interest from the time Pioneer actually received payment on those orders, rather than the dates of the orders themselves. However, this is the first time the issue has been raised. Pioneer had knowledge of the proposed dates and amount of interest prior to judgment, yet Pioneer did not object. We deem the issue waived and will not reach it.

AFFIRMED.