**COLORADO INTERSTATE CORPORATION; Colorado Interstate Gas Company, Plaintiffs–Appellants,**

v.

**The CIT GROUP/EQUIPMENT FINANCING, INC., Defendant–Appellee.**

**Nos. 91–1406, 92–1226.**

United States Court of Appeals, Tenth Circuit.

May 17, 1993.

Karen L. Pauley (Jeffrey M. Goldsmith and Rebecca H. Noecker with her on the briefs) of Colorado Interstate Gas Co., Colorado Springs, CO, for plaintiffs-appellants.

Alan S. Kopit of Hahn Loeser & Parks, Cleveland, OH (Katharine A. Van Tassel of Hahn Loeser & Parks, Cleveland, OH; Richard R. Young and Brent E. Rychener of Holme Roberts & Owen, Colorado Springs, CO, with him on the brief), for defendant-appellee.

Before McKAY, Chief Judge, LOGAN and SEYMOUR, Circuit Judges.

McKAY, Chief Judge.

In this diversity action, Plaintiffs Colorado Interstate Corporation and Colorado Interstate Gas Company (hereinafter collectively referred to as "Colorado Interstate") appeal from a district court order granting summary judgment to Defendant, The CIT Group/Equipment Financing, Inc. (hereinafter referred to as "CIT") on Colorado Interstate's restitution and breach of contract claims. 775 F.Supp. 369 (D.Col.1991). The claims arise from Colorado Interstate's lease of computer equipment.

In 1985, Colorado Interstate leased computer equipment from CMI Corporation (hereinafter referred to as "CMI"). The lease between CMI and Colorado Interstate (hereinafter referred to as the Master Lease) contained what is known as a "hell or high water clause" and provided for the assignment of rent payments. The Master Lease contained the following pertinent terms:

4. *Assignment, Obligation to Pay Rent Unconditional.*

Lessee ... (iii) agrees to comply fully with the terms of any such assignments and/or grants provided that such assignments and/or grants do not increase the Lessee's obligations nor decrease the Lessee's rights.... provided, however, that Assignee shall not be obligated to perform the obligations of Lessor hereunder unless Assignee expressly agrees to do so in writing....

. . . .

This Master Lease is a net lease and Lessee agrees that its obligations to pay all Basic Rent and other sums payable hereunder (collectively, *Rent*), and the rights of Lessor and Assignee in and to such Rent, are absolute and unconditional and are not subject to any abatement, reduction, setoff, defense, counterclaim or recoupment due or alleged to be due to, or by reason of, any past, present or future claims which Lessee may have against Lessor, Assignee, the manufacturer or seller of the equipment, or against any person for any reason whatsoever.

. . . .

18. *Miscellaneous.*

. . . .

(d) *Applicable Law.* This Master Lease and Equipment Schedule(s) will be governed by, and construed in accordance with, the laws of the State of Texas.

. . . .

(k) *Quiet Enjoyment.* Provided that no Event of Default has occurred or is continuing hereunder, Lessor, Assignee or their agents or assigns shall not interfere with Lessee's right of quiet enjoyment and use of the Equipment.

(Appellee's Supp.App. at 50, 55–57.)

In 1986, Colorado Interstate decided to upgrade its mainframe computer system. In

order to effectuate this upgrade, CMI entered into a lease with Electronic Data Systems Leasing Corporation (hereinafter "EDS") on December 4, 1986, whereby EDS leased the equipment to CMI (hereinafter referred to as the Prime Lease). CMI subsequently leased this equipment to Colorado Interstate on December 11, 1986, pursuant to an Equipment Schedule which incorporated by reference the terms of the Master Lease.

In June of 1987, CMI assigned its right to payments under the Master Lease to CIT. Preparatory to the assignment, Colorado Interstate signed a Consent and Agreement to assignment which provided in pertinent part:

The Company [Colorado Interstate] agrees:

(i) To remit and deliver all Moneys directly to [CIT] ... with identification of the source and application of the funds, without abatement, reduction, counterclaim or offset....

. . . .

[CIT] hereby agrees that so long as no Event of Default as defined in the lease shall have occurred and be continuing, it [CIT] will not disturb [Colorado Interstate's] quiet and peaceful possession of the Equipment and its unrestricted use of the Equipment for its intended purpose under the terms of the Lease.

(Appellee's Supp.App. at 65–66.) As a result, Colorado Interstate unconditionally agreed to pay all rents to CIT until the Master Lease expired in August of 1989.

In November of 1988, CMI ceased making payments to EDS under the Prime Lease. In January of 1989, CMI filed a petition under Chapter 11 of the Bankruptcy Code. CMI and EDS subsequently entered into an agreement approved by the bankruptcy court declaring the Prime Lease terminated as of November 8, 1988.[1]

Because it was no longer receiving rent payments from CMI, EDS demanded the return of the equipment from Colorado Interstate and threatened a replevin action. In order to avoid being dispossessed of the equipment, Colorado Interstate began paying EDS the amounts owed by CMI under the Prime Lease. Colorado Interstate also continued making payments to CIT in accordance with the assignment.[2]

In May of 1991, Colorado Interstate initiated this action against CIT seeking to recoup the rents paid to CIT after the termination of the Prime Lease in November 1988. Colorado Interstate also sought damages for breach of an agreement not to disturb Colorado Interstate's quiet enjoyment. The district court granted summary judgment in CIT's favor and awarded costs and attorney fees. Colorado Interstate brought this appeal.

I.

■ Our review of the district court's grant of summary judgment is *de novo*. *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1550 (10th Cir.1992). Summary judgment is only appropriate if the record demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; Fed.R.Civ.P. 56(c).

After a review of the record in this case, we are satisfied that no genuine issue of material fact exists that would preclude summary judgment.

A.

■ Colorado Interstate argues that upon the termination of the Prime Lease in November 1988, the Master Lease also terminated. Thus, Colorado Interstate argues that its duty to pay ended with the termination of the Master Lease.

■ It is clear that under Texas law, a sublessee's right of possession vis-a-vis the original lessor is secondary because there is no privity of contract between a sublessee and the original lessor. *Rogers v. Burton*, 496 S.W.2d 673, 675 (Tex.Civ.App.1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974). However, it does not

---

1. In light of our holding, we need not determine the validity of this stipulation vis-a-vis other parties.

2. In March, Colorado Interstate began making the payments to CIT under "reservations of rights."

follow that the obligations under a sublease cease upon termination of the prime lease. In *Frankfurt v. Decker*, 180 S.W.2d 985 (Tex. Civ.App.1944), the Texas Civil Court of Appeals held a sublessor did not escape his obligations under a sublease notwithstanding the termination of the prime lease. Noting principles of privity, the court rejected the sublessor's assertion that the sublessee's rights under the sublease were limited by the terms of the prime lease and affirmed an award of damages to the sublessee when he was evicted by the original lessor. *See id.* at 987.

Applied to the facts of this case, it is clear that Colorado Interstate's obligations under the Master Lease continued notwithstanding the termination of the Prime Lease. Colorado Interstate's remedy upon EDS's threatened replevin action was to bring an action against CMI for breach of its contractual obligations. Accordingly, Colorado Interstate's argument in this regard is unavailing.

### B.

■ Colorado Interstate also argues that the district court erred in holding that the obligation to pay rent under the hell or high water clause continued notwithstanding the fact that Colorado Interstate's right of quiet enjoyment was disturbed. Colorado Interstate argues that it was only obligated to pay rent under the hell or high water clause as long as it was obligated to pay rent at all, and that the duty to pay ceased when its quiet enjoyment was disturbed. Essentially, Colorado Interstate argues that its obligation to pay rent under the hell or high water clause and the covenant of quiet enjoyment are mutual or interdependent obligations under the contract.

CIT argues that even assuming, arguendo, that Colorado Interstate's quiet enjoyment was disturbed, under the hell or high water clause its right to uninterrupted rent payments continued because Colorado Inter-

state's unconditional obligation to pay rent was independent from the obligations of both CMI and CIT.[3]

A review of the unambiguous language of the lease reveals that Colorado Interstate did in fact agree to an unconditional obligation to pay rent that was separate from any duty or obligation of CMI or CIT. The lease states that

the rights of Lessor and Assignee in and to such Rent, are absolute and unconditional and are not subject to any abatement, reduction, setoff, defense, counterclaim or recoupment due or alleged to be due to, or by reason of, any past, present or future claims which Lessee may have against Lessor, Assignee, the manufacturer or seller of the equipment, or against any person for any reason whatsoever.

(Appellee's Supp.App. at 50.) Likewise, Colorado Interstate agreed in the Consent and Agreement "to remit and deliver all [rents] directly to [CIT] ... without abatement, reduction, counterclaim or offset...." *Id.* at 65.

Colorado Interstate's assertion that its duty to pay rent only continued as long as its quiet enjoyment remained undisturbed is without merit. When Colorado Interstate agreed to the terms of the Master Lease which contained the hell or high water clause, it agreed to continue making rent payments despite any claim it might have against either CMI or CIT. Colorado Interstate's sole remedy was limited to bringing an action against CMI while continuing to make rent payments. Neither the assignment nor CMI's status as debtor in bankruptcy relieved Colorado Interstate of this obligation. Essentially, Colorado Interstate assumed the risk of CMI's nonperformance.

Colorado Interstate attempts to circumvent this result by citing Texas constructive eviction cases for the proposition that breach of the covenant of quiet enjoyment relieves a

---

**3.** CIT also disputes that Colorado Interstate's right to quiet enjoyment was ever violated because Colorado Interstate never lost possession of the equipment. CIT points out that in accordance with the lease, it never assumed CMI's obligation to pay rent to EDS under the prime lease, nor did it assume responsibility for CMI's

promise not to disturb Colorado Interstate's quiet enjoyment. CIT contends that it only covenanted that neither CIT nor its agents would disturb Colorado Interstate's quiet enjoyment, and that it has lived up to this promise. In light of our holding, we need not address these points.

tenant from the duty to pay rent. *See Downtown Realty, Inc. v. 509 Tremont Bldg., Inc.*, 748 S.W.2d 309, 312–13 (Tex.Ct.App. 1988); *Fidelity Mut. Life Ins. Co. v. Kaminsky*, 768 S.W.2d 818, 819 (Tex.Ct.App.1989). Assuming that Colorado Interstate's right of quiet enjoyment was disturbed in a manner cognizable under Texas law,[4] Colorado Interstate's reliance on these cases is still misplaced. *Downtown* and *Fidelity* are clearly distinguishable in that the leases at issue did not contain a hell or high water clause that effectively separated the parties' respective duties and obligations. Accordingly, Colorado Interstate's reliance on these cases for the proposition that the right of quiet enjoyment is inseparable from the duty to pay rent is without merit.

Although the Texas courts have not expressly ruled on the enforceability of the hell or high water clause at issue in this case, they have as a general matter recognized the enforceability of an unconditional obligation to pay rent.[5] In *Stewart v. United States Leasing Corp.*, 702 S.W.2d 288 (Tex.Ct.App. 1985), Stewart arranged for United States Leasing to purchase a copy machine from Salt and Pepper Copiers and then lease it to him. Stewart agreed *to an unconditional obligation to pay rent to the defendant, regardless of any claim plaintiff might have against the vendor.* When the vendor failed to deliver the copier to Stewart, he ceased making rent payments and United States Leasing brought suit. The court noted:

> An examination of the lease reveals that Salt and Pepper Copiers was not an agent of [defendant], the lessor, and that any claims regarding the equipment were to be made solely against the vendor, Salt and Pepper Copiers. It further expressly provided that regardless of claims against Salt and Pepper Copiers, Stewart was to pay all rents payable under the lease.

*Id.* at 290. The court went on to reject Stewart's claim of lack of consideration and enforced the Stewart's unconditional obligation to pay rent.

Other courts that have considered the enforceability of hell or high water clauses have enforced such provisions in analogous situations. *See, e.g., American Computer v. Jack Farrell Implement*, 763 F.Supp. 1473, 1484 n. 9 (D.Minn.1991), *aff'd*, 967 F.2d 1208 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992); *Philadelphia Sav. Fund Soc'y v. Deseret Management Corp.*, 632 F.Supp. 129, 135–36 (E.D.Pa.1985); *In re CLE Corp.*, No. 85–06877–SWC, slip op. at 15–18 (Bankr. N.D.Ga., April 5, 1989); *West Virginia v. Hassett (In re O.P.M. Leasing Services, Inc.)*, 21 B.R. 993, 1006–07 (Bankr.S.D.N.Y. 1982).

In *O.P.M.*, after reviewing the effect of a similar hell or high water clause, the court reasoned as follows:

> To deny this clause its full force and effect would effectively reconstruct the contract contrary to the intent of the parties, which reconstruction would be impermissible.
>
> Moreover, it is a well-settled principle that "parties to a contract are given broad latitude within which to fashion their own remedies for breach of contract.... It follows that contractual limitations upon remedies are generally to be enforced unless unconscionable."
>
> . . . .
>
> The essential practical consideration requiring liability as a matter of law in these situations is that these clauses are essential to the equipment leasing industry. To deny their effect as a matter of law would seriously chill business in this industry because it is by means of these clauses that a prospective financier-assignee of rental payments is guaranteed meaningful security for his outright loan to the lessor. Without giving full effect to such clauses, if the equipment were to malfunction, the only security for this assignee would be to repossess equipment with substantially diminished value.

---

**4.** In light of our holding, we need not determine whether, under the facts of this case, Colorado Interstate's right to quiet enjoyment was in fact violated or whether CIT is responsible for any such violation.

**5.** Texas law also recognizes unconditional obligation to make payments under a waiver of defense clause. *See* Texas Bus. & Comm.Code Ann. § 9.206 (Vernon Supp.1990).

*O.P.M.*, 21 B.R. at 1006–07 (citations omitted). The court went on to enforce the provisions of the hell or high water clause and held that despite the lessor's breach of an obligation to maintain the equipment, the lessee's unconditional obligation to pay rent continued.

> As one commentator has noted:
>
> Under the hell or high water provision, the lessee undertakes to pay rentals ... once the lessee has formally accepted the property.... Whether the property functions satisfactorily, is useful to the lessee, is suitable for the purposes intended, or is lost, stolen, condemned, or destroyed, and whether the lessee has any right of offset against the lessor or the lenders, is irrelevant. In short, rent payments continue to come hell or high water, without any reduction or offset, even if the lessee is wrongfully dispossessed of the equipment by the lessor....

1 Bruce E. Fritch et. al., Equipment Leasing–Leveraged Leasing 152–53 (3d ed. 1988).

■ Where sophisticated parties enter into an agreement setting forth their rights and obligations, the terms of the agreement should control unless the agreement would otherwise be void under state law. *E.g., Graham Const. Co. v. Walker Process Equip., Inc.*, 422 S.W.2d 478, 483 (Tex.Civ. App.1967). As noted by the *O.P.M.* court, there are significant policy reasons for upholding hell or high water clauses where, as in the equipment leasing industry, the enforceability of the provision aids the parties in obtaining financing that would not otherwise be available.[6] Such policy justifications are particularly important in the computer leasing industry where advances in technology significantly decrease the value of equipment that is quickly becoming obsolete. *Cf., O.P.M.*, 21 B.R. at 1007 (noting that in the absence of a hell or high water clause, if the equipment malfunctioned, the only security available to the assignee would be the repossession of equipment having substantially reduced value).

In the instant case, sophisticated and well-represented parties entered into an agreement which detailed their rights and obligations. The agreement was advantageous to all parties involved and provided Colorado Interstate with equipment it may not have been able to obtain absent the unconditional obligation to pay rent. In the absence of fraud or deceit which is not claimed here, it is our view that under Texas law the parties should be held to their agreement. We are of the view that Colorado Interstate assumed the risk of CMI's nonperformance and should not be relieved of its obligations under the agreement simply because CMI happens to be a debtor in bankruptcy. *See* Fritch at 153. We hold that pursuant to the terms of the hell or high water clause, Colorado Interstate's obligation to pay rent continued notwithstanding CMI's default and the threat of a replevin action by EDS.

### C.

Colorado Interstate attempts to distinguish the instant situation from other cases that have enforced hell or high water clauses on a number of grounds. Colorado Interstate argues that, unlike other cases, it was deprived of the very item contemplated by the contract. Given the result in *Stewart* where the lessee likewise was denied the subject matter of the lease, we find this argument unpersuasive.

### D.

■ Colorado Interstate also attempts to distinguish this case because of the nondiminution in rights clause contained in the Master Lease. The Master Lease provided as follows: "Lessee ... (iii) agrees to comply fully with the terms of any such assignments and/or grants provided that such assignments and/or grants do not increase the Lessee's obligations nor decrease the Lessee's

---

6. As evidence of the growing acceptance of a hell or high water provisions in the equipment leasing industry, we note that § 2A–407 of the U.C.C. provides that in all finance leases other than those involving a consumer, "the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods." *Id.* As the Comments note, "[t]his section is self-executing; no special provision need be added to the contract." *Id.*, cmt. To date, the Texas legislature has not adopted § 2A of the U.C.C.

rights." (Appellee's Supp.App. at 50.) Colorado Interstate argues that the nondiminution in rights clause requires that Colorado Interstate be no worse off after an assignment than before. Colorado Interstate argues that had the assignment not occurred, it would not have had an unconditional obligation to continue paying CMI because when its right to quiet enjoyment was disturbed by CMI's cessation of payments to EDS, its obligation to continue paying rent would have ceased. Colorado Interstate therefore asserts that the nondiminution of rights clause requires the same result after the assignment.

■ As we have previously noted, the hell or high water clause in this case effectively separated the obligations of CMI and CIT from Colorado Interstate's obligation to pay rent. As a result, even absent the assignment, Colorado Interstate would not have been released from its obligation to pay rent upon CMI's default; Colorado Interstate's remedy would have been limited to bringing an action against CMI while it continued to make rent payments pursuant to the lease. Accordingly, Colorado Interstate's contention in this regard is without merit.

### E.

■ Colorado Interstate also argues that the policy justifications for enforcing the hell or high water clause in the *O.P.M.* case are not present in this case because the record would not support the conclusion that CIT was a finance lessor. In *O.P.M.*, the court noted that other courts had distinguished between finance lessors and merchant lessors in considering the enforceability of a hell or high water clause.[7] *See O.P.M.*, 21 B.R. at 1007. Colorado Interstate does not argue that CIT is a merchant lessor or that the same policy would not apply to a financier-assignee such as CIT; rather, it merely asserts the record would not support a finding that CIT is a finance lessor.

As an initial matter it is important to note that the distinction between merchant and finance lessors in the context of determining the enforceability of hell or high water clauses in *O.P.M.* was but part of the court's reasoning. In any event, the rationale for enforcing a hell or high water clause in a case involving a financier-assignee clearly applies, as noted by the *O.P.M.* court.[8]

> The essential practical consideration requiring liability as a matter of law in these situations is that these clauses are essential to the equipment leasing industry. To deny their effect as a matter of law would seriously chill business in this industry because it is by means of these clauses that a prospective financier-assignee of rental payments is guaranteed meaningful security for his outright loan to the lessor.

*O.P.M.* 21 B.R. at 1007. Moreover, we are of the view that the policy reasons for distinguishing between merchant lessors and finance lessors when determining the enforceability of a hell or high water clause should not apply where, as in this case, the lessor has expressly disclaimed all warranties of merchantability and suitability, and the lessee has expressly assumed responsibility, vis-a-vis the lessor, for the suitability and functioning of the leased equipment.[9] According-

---

7. The court defined finance and merchant lessors as follows: "[A] finance lessor [is one] whose only service is to provide funds and who is not [a] merchant lessor. A merchant lessor is one who deals in goods and holds itself out as having specialized knowledge about the design, operation and repair of the chattel leased." *O.P.M.*, 21 B.R. at 1007. The significance of being classified as a merchant lessor is that merchant lessors may be charged with statutory warranties of merchantability and suitability for a particular purpose under 2A of Uniform Commercial Code, or by applying the provisions of article 2 by analogy in those jurisdictions that have yet to adopt article 2A. *See* Fritch, *supra,* at 48–49, 63–64, 66–68.

8. In exchange for permanent financing of $700,-000, CMI assigned its right to receive the rental payments to CIT. (Appellee's Supp.App. at 331–32.)

9. The Master Lease provided as follows:
 3. *Acceptance, Warranties, Limitation of Liability.* Lessee represents and agrees that ... each Leased Item is of a size, design, capacity and manufacture selected by Lessee and that Lessee has as between Lessee and Lessor unconditionally accepted such Item.... LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY BY THE EQUIPMENT,

ly, Colorado Interstate's attempt to distinguish this case on this ground is without merit.[10]

F.

■ Additionally, Colorado Interstate asserts the enforcement of the hell or high water clause under the circumstances of this case would amount to an impermissible penalty under Texas law. A review of the record in this case reveals that Colorado Interstate did not raise this matter in the trial court. Nonetheless, in dicta the district court addressed this issue sua sponte: "If CMI or [EDS] had in fact repossessed the computer equipment, under Texas law the continued obligation to pay rent is a penalty and would be unenforceable." (Appellee's Supp.App. at 5.)

■ It is well established that a federal appellate court will not consider an issue "which was not presented to, considered or decided by the trial court." *Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1425 (10th Cir.1987). However, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."

*Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

Although the district court did not have the benefit of argument on this issue, the issue was considered by the court. In addition, the issue has been briefed fully on appeal. Because the determination of whether a contractual provision is an unenforceable penalty is a matter of law, *see Lefevere v. Sears,* 629 S.W.2d 768, 771 (Tex.Civ.App. 1981), we will exercise our discretion and consider this issue.[11]

Under Texas law, "[t]he right of competent parties to make their own bargains is not unlimited." *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952). One such limitation is where a stipulated damage provision is viewed to constitute a penalty. *See id.* 245 S.W.2d at 486–87. "The universal rule for measuring damages for breach of contract is just compensation for the loss or damages actually sustained," and "[a] party has no right to have a court enforce a stipulation which violates that rule."[12] *Id.* at 486. Thus, where an "agreement contains several matters of different degrees of importance, and yet the sum named is payable for the breach of any, even the least[,] ... the sum stipulated to be paid has been treated as a penalty." *Id.*

BY ANY INADEQUACY THEREOF OR DEFICIENCY OR DEFECT THEREIN, BY ANY INCIDENT WHATSOEVER IN CONNECTION THEREWITH, OR IN ANY WAY RELATED TO OR ARISING OUT OF THIS AGREEMENT EXCEPT AS SUCH CLAIM, LOSS OR DAMAGE RESULTS FROM THE NEGLIGENCE OR WILLFUL MISCONDUCT OF THE LESSOR. LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OF ANY KIND, INCLUDING THOSE OF MERCHANTABILITY, DURABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR USE WITH RESPECT TO THE EQUIPMENT AND EXPRESSLY DISCLAIMS THE SAME.
(Appellee's Supp.App. at 49–50.)

10. Under Article 2A of the Uniform Commercial Code, the distinction between finance and merchant lessors is not dispositive for determining the enforceability of a hell or high water clause. If a lease is "finance lease," the obligation to pay rent automatically is separated from a lessor's obligation. *See supra*, note 5. A finance lease is defined as

a lease in which (i) the lessor does not select, manufacture or supply the goods, (ii) the lessor acquires the goods or the right to possession

and use of the goods in connection with the lease, and (iii) either the lessee receives a copy of the contract evidencing the lessor's purchase of the goods on or before signing the lease contract, the lessee's approval of the contract evidencing the lessor's purchase of the goods is a condition to effectiveness of the lease contract.
§ 2A–103(1)(g), Uniform Commercial Code. The comments to this section states: "A lessor who is a merchant with respect to goods of the kind subject to the lease may be a lessor under a finance lease." *Id.*, cmt. As previously mentioned, Texas has yet to adopt Article 2A.

11. In exercising our discretion to consider this issue, we do not hold that Colorado Interstate was entitled to review of this issue as a matter of right.

12. In addition to the just compensation requirement, Texas law also requires that the amount stipulated to be reasonable when judged at the time of the making of the contract, and that the amount be difficult or impossible to accurately ascertain. *Id.* at 448 (citing the Restatement of Contracts § 339); *Presnal v. TLL Energy Corp.,* 788 S.W.2d 123, 127 (Tex.Ct.App.1990).

Although there is no stipulated damage provision at issue in the instant case, Colorado Interstate nonetheless contends that the effect of the hell or high water clause in this case amounts to a penalty because Colorado Interstate was required to pay twice for the computer equipment to avoid having it repossessed. In support of this position, Colorado Interstate cites Texas case law holding a lessor could not enforce a liquidated damage provision requiring full payments for future rents where the lessor had also repossessed the equipment. *See American Lease Plan v. Ben–Kro Corp.*, 508 S.W.2d 937, 943–44 (Tex. Civ.App.1974); *Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Div.*, 572 S.W.2d 53 (Tex.Civ.App.1978).

Because there is no stipulated damage provision at issue in this case, an analysis under penalty law does not lend itself to the present inquiry. *See id.* at 55 (the question of whether a contractual provision provides for a penalty may be determined entirely from the face of the contract).[13] In any event, Colorado Interstate's assertion in this regard is unavailing because the primary focus of a penalty inquiry is just compensation. Unlike the facts in *American Lease* and *Southwest Park*,[14] there is no issue of unjust compensation in this case. Furthermore, Colorado Interstate had a cause of action against CMI when it ceased making payments to EDS. Because the reasonableness of a stipulated damage provision is determined at the time

the parties entered into the agreement, the fact that CMI is presently in bankruptcy should not affect the determination of the issue of just compensation in this case. In contrast, in *American Lease* and *Southwest Park* there was never an available cause of action to recover damages for the repossession of the leased equipment.

Although Colorado Interstate may have been forced to choose between making double payments or having the equipment repossessed, this does not create an unenforceable penalty under Texas law. By agreeing to the terms of the Master Lease and Equipment Schedule, Colorado Interstate assumed the risk of CMI's nonperformance. Accordingly, Colorado Interstate's argument in this regard is without merit.

## II.

Colorado Interstate also appeals the district court's award of attorney fees and costs pursuant to section 18(c) of the Master Lease. Colorado Interstate argues that CIT was not entitled to fees and costs and that the district court misinterpreted the Security Agreement.

After the court ruled in favor of CIT's motion for summary judgment, CIT filed a motion for costs and attorney fees pursuant to the terms of the Master Lease. In a response brief, Colorado Interstate objected to CIT's motion for fees and costs.[15] There-

13. At best, Colorado Interstate could argue that the effect of the hell or high water clause and CMI's bankruptcy was to set a stipulated damage of $0 for CMI's breach. However, low stipulated damages, as opposed to high stipulated damages, are analyzed under unconscionability doctrines—not penalty doctrines. *See* Restatement (Second) of Contracts, § 356 cmt. a (1981).

14. In *American Lease*, the lessee failed to make rent payments. The lessor repossessed the equipment and sought damages for all future rentals pursuant to a liquidated damage clause. The court held that the lessor was not entitled to repossess the equipment and also recover the full amount of unaccrued and unearned rentals for the unexpired term of the lease because such a recovery would be in excess of just compensation. *American Lease*, 508 S.W.2d at 943. In *Southwest Park*, the lessor had disclaimed, and the lessee had assumed, responsibility for the suitability and functioning of certain equipment. When the equipment proved to be unsuitable, the

lessee ceased making rent payments. The lessor sought to repossess the equipment and collect future rentals pursuant to the terms of a liquidated damage clause. Citing to *American Lease*, the court struck the liquidated damage provision of the lease because it would permit a measure of recovery in excess of just compensation because it did not require the lessor to credit to lessee's account those funds received from the sale or releasing of the equipment. *Southwest Park*, 572 S.W.2d at 56–57.

15. Colorado Interstate made the following arguments: the costs claimed exceeded that allowed under the Federal Cost Statute; the Federal Cost Statute does not provide for attorney fees; the judgment didn't provide for attorney fees; CIT was not entitled to recover fees under the American rule or under the Master Lease; CIT had failed to demonstrate that any right in the Master Lease had been assigned to it; even if CIT was entitled to collect attorney fees under 18(c) of the Master Lease, any recovery is barred because

after, CIT filed a reply to Colorado Interstate's response. Subsequently, CIT filed a motion to amend its motion for attorney fees and costs to which Colorado Interstate objected by filing a response brief. In reply to Colorado Interstate's response, CIT filed a reply brief to which it attached for the first time, a copy of the Security Agreement which contained the actual assignment. Thereafter, Colorado Interstate filed a motion requesting leave to respond to CIT's reply. In the brief that was attached to the motion to respond, Colorado Interstate made the arguments that it now makes on appeal: that CIT was only assigned the right to receive rental payments and that default was a condition precedent to the exercise of all other rights; and that all rights CIT received as a result of the assignment terminated upon satisfaction of the Security Agreement. The court denied Colorado Interstate's motion to file a response to CIT's reply brief and did not address the arguments raised therein.

■ As an initial matter we must determine whether we can properly address the arguments Colorado Interstate raises on appeal and which it attempted to raise when it filed its motion for leave to file a response to CIT's reply brief. As previously noted, we normally will not consider an issue "which was not presented to, considered or decided by the trial court." *Cavic,* 825 F.2d at 1425. In this case, however, we are of the view that the circumstances justify exercising our discretion because the arguments Colorado Interstate makes on appeal should have been considered by the trial court as they were proffered immediately after, and in response to evidence proffered by CIT.

CIT failed request attorney fees as part of a compulsory counterclaim as required by Fed. R.Civ.Proc. Rule 13; and that if attorney fees were warranted, the amount requested was unreasonable. Appellant's App. (No. 92–1226), Ex. B at 1–3.

16. The Consent and Agreement, which was part of the record, contained the following language: [Colorado Interstate] hereby acknowledges and consents to the assignment by CMI to [CIT] of all right, title, interest, claim and demand, as lessor, in, to and under the [Master Lease], and the rental payments due thereunder (com-

■ Although Colorado Interstate could have properly raised these arguments earlier given the lack of any dispute as to whether an assignment actually occurred,[16] it was not entirely inappropriate for Colorado Interstate to make these arguments only after the assignment was actually proffered by CIT. While we understand the court's desire to cut off briefing and its apparent impatience with Colorado Interstate given the nature of several of the objections it raised to CIT's motion for costs and attorney fees, we are of the view that the court should nonetheless have considered the arguments Colorado Interstate attempted to make when it filed its motion for leave to file a response. Because the court should have considered Colorado Interstate's arguments, and because resolution of this matter is solely a legal matter of contract interpretation,[17] we will address Colorado Interstate's contentions in this regard.

■ The Master Lease provided that "[i]n the event of an assignment, Lessor shall notify Lessee of such assignment and thereafter, all references herein to Lessor shall include Assignee; ...." (Appellee's Supp. App. (No. 92–1226) at 7.) Section 18(c) of the Master Lease provided that "[i]n the event of *any action at law or suit in equity* in relation to this Master Lease or any Equipment Schedule, the prevailing party will be entitled to a reasonable sum for its attorney's fees and costs." *Id.* at 13 (emphasis added). The Security Agreement provided as follows:

CMI hereby Grants to [CIT] all of CMI's right, title, interest, claim and demand in, to and under the [Master Lease] (other than amounts payable to CMI pursuant to any indemnification provisions)....

....

mencing with the rental payment due on August 1, 1987) and all other moneys from time to time payable to or receivable by CMI under any provisions of the [Master Lease], all such amounts being hereinafter referred to as the "Moneys"....
Appellant's Initial Br. (No. 92–1226), Ex. D at 1. This language is nearly identical to that contained in the Security Agreement.

17. Colorado Interstate does not assert that an ambiguity exists which precludes our legal interpretation of the contractual provisions.

*Section 1.07. Assignment of [Master Lease].* Confirmatory of its Grant of the [Master Lease], CMI hereby irrevocably Grants to [CIT] ... all its right, title, interest, claim and demand in, to and under the [Master Lease], and all rental payments and rental installments due thereunder (commencing with the rental payments due on August 1, 1987), damages, and other moneys from time to time payable to or receivable by CMI under the [Master Lease] other than amounts payable to CMI pursuant to the indemnification provisions of the Master Lease.... So long as no Event of Default shall have occurred and be continuing under this Agreement, CMI shall be entitled to exercise all of its rights under the [Master Lease] except the right to receive Moneys directly from the Lessee (which shall be [CIT's] whether or not an event of Default shall have occurred) and except to the extent that such exercise would violate any provision of this Agreement. Upon the occurrence and continuance of an Event of Default under this Agreement, [CIT] shall be entitled to exercise all of CMI's rights under the [Master Lease] to the extent assigned hereby upon notice to CMI as provided herein, and CMI shall have no further rights thereunder with respect to such rights ... until the termination of the lien created under this Agreement as provided herein, whereupon all rights granted hereunder to CIT shall terminate and revert to CMI....

(Appellant's Initial Br. (No. 92–1226), Ex. C at 1, 3.)

Initially, Colorado Interstate argues that CMI did not assign all of its rights in the Master Lease, but rather only the right to receive rental payments. Thus, Colorado Interstate argues that in the absence of a default on the part of CMI which would have triggered an assignment of all remaining rights to CIT, CMI retained rights including the right to rely on the attorney fees provision which were never passed on to CIT. Colorado Interstate argues that because no evidence was presented indicating CMI's default under the agreement, CIT never became entitled to rely on the costs and attorney fees provision in section 18(c) of the Master Lease.

The granting clause of the Security Agreement clearly assigned to CIT all of CMI's rights under the lease excepting only CMI's right to receive payments pursuant to an indemnification provision. Section 1.07 reiterates that all of CMI's rights, except the right to receive payments pursuant to the indemnification provision, were assigned to CIT. In addition, section 1.07 specifically articulates that the assignment to CIT included the right to receive all rental payments, damages, and other moneys payable pursuant to the Master Lease. This language clearly disposes of Colorado Interstate's contention that only the right to receive rental payments was assigned. Moreover, we are of the view that the reference to damages and other moneys includes the right to recover attorney fees and costs. In addition, this section indicates that CIT's right to receive moneys is not dependent upon the occurrence of an event of default. Accordingly, we hold that Colorado Interstate's contentions in this regard are without merit.

 Colorado Interstate also argues that even assuming CIT did receive a right to the attorney fees and cost provision, upon satisfaction of the lien all of the rights CIT received pursuant to the assignment terminated. Colorado Interstate asserts that

CIT Group failed to prove that the lien did not terminate thereby causing such a right to revert to CMI. There is no evidence in the record that the terms and conditions of the Security Agreement were not met or that the Secured Note was not paid off in full upon receipt of all of the rental payments from Colorado Interstate.

... Thus, even if CIT Group could have demonstrated an assumption of rights under the attorneys' fees clause, a second condition precedent to exercise of those rights against Colorado Interstate was not proven.

(Appellant's Br. (No. 92–1226) at 14–15.)

A review of section 18(c) of the Master Lease suggests the parties intended that the attorney fees and costs provision be construed broadly as evidenced by the expansive language that in *"any action ... in relation to this Master Lease,"* attorney fees and

costs be awarded. Appellee's Supp.App. (No. 92–1226) at 13 (emphasis added). This language suggests that the parties intended that the protection of the attorney fees and costs provision apply irrespective of when the action was brought. For example, if CIT had brought an action against Colorado Interstate claiming all rental payments had not been paid when in fact they had, we are of the view that Colorado Interstate would have been able to collect attorney fees pursuant to the terms of the Master Lease even if they had shown as part of their defense that all payments had in fact been paid and that the lien had been satisfied. Applying this reasoning to the instant case, it is apparent that the fees and costs provision should remain in effect to benefit CIT.

In any event, Colorado Interstate's argument regarding an unestablished condition precedent is unavailing. As an initial matter, we note that satisfaction of the lien would not be a condition precedent to CIT's right to the attorney fees and cost provision in the Master Lease, but rather a condition subsequent.[18] Moreover, a proponent of a condition subsequent has the burden of demonstrating the condition has taken place. *See Employers Casualty Co. v. Ragley*, 197 S.W.2d 536, 538 (Tex.Civ.App.1946); *St. Paul Fire & Marine Ins. Co. v. Westmoreland*, 105 S.W.2d 203, 204–05 (Tex. Comm.App.1937); *Supreme Lodge of Knights of Honor v. Wollschlager*, 22 Colo. 213, 44 P. 598, 598–99 (1896) (proponent of condition subsequent had burden of alleging and proving existence of condition); John D. Calamari & Joseph M. Perillo, Contracts § 11–7, at 442 (3rd ed. 1987); William Jaeger, Williston on Contracts § 667, at 150–51 (3rd ed. 1968). Taking Colorado Interstate's assertion regarding the state of the record as true, we hold that Colorado Interstate has failed to meet its burden regarding the occurrence of the condition and that CIT's right to the attorney fees and cost provision continued. Because the instant action clearly related to the Master Lease, we hold that

the district court properly awarded attorney fees and costs to CIT.[19]

The judgment of the district court is AFFIRMED.

---

18. A condition precedent is "one which is to be performed before some right dependent thereon accrues." Black's Law Dictionary 293 (6th ed. 1990). A condition subsequent is "a condition referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party...." *Id.* at 294.

19. Colorado Interstate does not assert on appeal that the amount awarded was unreasonable.