WASHINGTON BANK AND TRUST COMPANY, Plaintiff-Appellant, *v.* LANDIS CORP. T/A SOFRONEY REALTORS, Defendant and Third-Party Plaintiff-Appellee.—(Executive Commercial Services, Ltd., Third-Party Defendant.)

Second District   No. 82—220

Opinion filed January 26, 1983.

Robert R. Verchota, Keith E. Roberts, and Rodney W. Equi, all of Donovan & Roberts, of Wheaton, for appellant.

Peter A. Zamis, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Washington Bank and Trust Company, as assignee of an equipment lease, brought suit against Landis Corporation T/A Sofroney Realtors for sums due under the lease. After trial, the circuit court of Du Page County found in favor of Landis. The bank appeals.

On December 21, 1976, Landis entered into an equipment lease with Executive Commercial Services, Ltd. The lease provided that Executive would purchase for Landis a photocopy machine of a make and model selected by Landis. Landis chose a certain Toshiba-brand copier, which Executive purchased from American Duplicating Products. In return, Landis was required to pay to Executive 60 monthly rental payments of $139.32 plus a security deposit ("advance rental") on the last two months. On the same day the lease was executed, Landis acknowledged delivery of the machine by executing a receipt.

Over the next 2½ months, the machine was in constant disrepair, and American Duplicating sent repairmen as often as several times a week. Beginning in February 1977, Landis and American Duplicating exchanged a flurry of letters. Landis eventually went so far as to suggest the machine be replaced, a copy of this letter being sent to Executive. American Duplicating agreed to replace it with a comparable or

better machine in a letter dated February 24, 1977. The owner of Landis was on vacation in late February and early March 1977. When he returned, the machine was gone.

In its place was a new Royal-brand photocopy machine of inferior quality. Letters and now telephone calls ensued. Sometime between March 5 and 8, the owner of Landis called an official at Executive who said a new lease would be prepared for the new machine. When the owner of Landis discovered the same price would be charged for the new machine, he refused to execute the new lease with Executive.

Since then, Landis has never used the new machine. The owner has requested that it be removed and on one occasion tried to return it to American Duplicating himself. Landis has since made no payments on either the old or new machine, and instead leases a Xerox-brand machine to meet its duplicating needs.

Little known to Landis, on March 7, 1977—during the throes of the controversy—Executive assigned the first lease to the bank. Landis first learned of this assignment on January 23, 1978, in a letter from the bank. The record leaves no clue why Executive assigned a lease which either was rescinded or might soon be so; further, the record is scant on what the bank knew concerning the status of the lease, although the fact that the lease was bought in bulk suggests the bank was an innocent purchaser.

In any event, the essence of the complaint is that the bank now wants Landis to pay to the bank sums due under the first lease, even though the machine never worked and even though it was taken from Landis to make room for a replacement Landis never accepted. The trial court found that Executive could assign to the bank no more than it had, which was nothing. Executive could not enforce the first lease because it knew Landis was not in possession of the copier pursuant to the terms of the lease. Accordingly, since the bank took nothing, the trial court entered judgment for Landis.

Article 9 of the Uniform Commercial Code, specifically section 9—206, provides in part:

> "(1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). ***"

Ill. Rev. Stat. 1975, ch. 26, par. 9—206.

That section applies to a lease regardless of whether it is intended as a security interest. (Ill. Ann. Stat., ch. 26, par. 9—206, Uniform Commercial Code Comment, at 129 (1974).) The bank took the assignment for value, in good faith, and without notice of a claim or defense. The lease provides in part that Landis will not assert defenses it has against Executive against the bank. Thus, only the holder-in-due-course defenses set out in article 3 are valid. That section provides in part:

"To the extent that a holder is a holder in due course he takes the instrument free from

\* \* \*

(2) all defenses of any party to the instrument with whom the holder has not dealt except

(a) infancy, to the extent that it is a defense to a simple contract; and

(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument." Ill. Rev. Stat. 1975, ch. 26, par. 3—305.

■ None of those defenses is applicable in the present case. Recission or termination of the instrument, if that occurred here, would be an ordinary discharge (of which the bank had no notice). The only conceivable subsection then which might apply is (b), which focuses on "such other incapacity, or duress, or illegality \* \* \* as renders the obligation \* \* \* a nullity." (Ill. Rev. Stat. 1975, ch. 26, par. 3—305(b).) The comments to that subsection, however, suggest that it is limited as written—to insanity, duress, illegality, gambling, etcetera. (Ill. Ann. Stat., ch. 26, par. 3—305, Illinois Code Comment, at 180-82 (Smith-Hurd 1963).) Accordingly, Landis must pay.

■ Landis asserts, however, that paragraph 7 of the lease provides that Executive's right to assignment is subject to Landis' right to use and possession of the machine. Landis contends that since it didn't have such use and possession, the assignment was ineffective. Whatever rights that provision may create between Landis and Executive, it cannot affect the rights of the bank against Landis under ar-

ticle 9.

Accordingly, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.