**COLORADO INTERSTATE CORPORATION and Colorado Interstate Gas Company, Plaintiffs,**

v.

**CIT GROUP/EQUIPMENT FINANCING, INC., Defendant.**

**Civ. A. No. 91–B–749.**

United States District Court, D. Colorado.

Oct. 17, 1991.

Karen L. Pauley, Jeffrey M. Goldsmith, Colorado Interstate Gas Co., Colorado Springs, Colo., for plaintiffs.

Richard R. Young, Brent E. Rychener, Dominic J. Ricotta, Holme Roberts & Owen, Colorado Springs, Colo., Alan S. Kopit, Katharine A. Van Tassel, Hahn Loeser & Parks, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs and defendant both move for summary judgment, asserting that there is no genuine dispute of material fact and that judgment can enter as a matter of law. The issues were adequately briefed and oral argument will not materially assist their resolution. Defendant contends that plaintiffs have an "absolute and unconditional" obligation to pay rent. I agree and grant summary judgment for defendant.

On November 27, 1985, plaintiffs Colorado Interstate Corporation and Colorado Interstate Gas Company (collectively "Colorado Interstate") entered into a lease agreement (the master lease) with CMI Corporation (CMI) for the rental of computer equipment. The master lease set forth terms applicable to all subsequent lease transactions between the parties. It provided in a "hell or high water" clause that the rights of the lessor and any assignee of the lessor to payment of rent:

> are absolute and unconditional and are not subject to any abatement, reduction, setoff, defense, counterclaim, or recoupment due, or allegedly due to, or by reason of, any past, present or future claims which Lessee may have against Lessor, Assignee, the manufacturer or seller of the equipment, or against any person for any reason whatsoever.

Further, the master lease provided that any assignee shall not be obligated to perform lessor's obligations. A covenant of quiet enjoyment provided that neither lessor nor any assignee would interfere with the lessee's quiet enjoyment and use of the computer equipment. Finally, this lease provided that Texas law would control any dispute.

Approximately a year later, Colorado Interstate decided to upgrade their mainframe computer. To obtain the equipment requested by Colorado Interstate, CMI entered into an equipment lease with Electronic Data Systems Leasing Corporation (Electronic Data). In December 1986, CMI and Colorado Interstate executed Equipment Schedule No. 8 for the rental of the upgraded mainframe computer. The master lease was explicitly incorporated into this schedule.

In June 1987, CMI assigned its income rights under Equipment Schedule No. 8 to The CIT Group (CIT). Colorado Interstate signed a Consent and Agreement to Assignment, which referenced the master lease and provided that payments to CIT would be without "abatement, reduction, counterclaim or offset." CIT agreed not to interfere with Colorado Interstate's quiet enjoyment and use of the equipment. Colorado Interstate paid the monthly rent to CIT until the term of the Equipment Schedule expired in August 1989, and had possession and use of the computer for that period.

In January 1989, CMI filed a Chapter 11 bankruptcy petition and stopped making payments on its lease with Electronic Data. On stipulation by CMI and Electronic Data, the bankruptcy court declared that the Electronic Data lease had terminated, prepetition, in November 1988. Electronic Data then demanded that Colorado Interstate return the mainframe computer, threatening to replevy the equipment. To avoid the replevin action, Colorado Interstate paid Electronic Data the amounts owed by CMI. Thus, Colorado Interstate effectively paid rent twice for the same computer equipment.

The "hell or high water" clause here is clear and unambiguous. Colorado Interstate agreed to pay rent to its lessor or the lessor's assignee regardless of whether CMI breached the agreement. This clause

effectively severed the duty of the lessee to pay rent from the duty of the lessor to perform its obligations under the contract. Thus, plaintiffs contracted to assume the risk of CMI's nonperformance.

■ It is a fundamental maxim of contract law that parties are free to fashion their own remedies and to allocate risks among themselves. Absent unequal bargaining power or unconscionability, which are not alleged here, a court will not rewrite a contract simply because one party is disappointed with its results. *See e.g., Philadelphia Savings Fund Society v. Deseret Management Corp.*, 632 F.Supp. 129, 136 (E.D.Pa.1985); *West Virginia v. Hassett (In re O.P.M. Leasing Services, Inc.)*, 21 B.R. 993, 1006 (Bkrtcy. S.D.N.Y.1982), ("To deny this [hell or high water] clause its full force and effect would effectively reconstruct the contract contrary to the intent of the parties, which reconstruction would be impermissible").

■ Hence, courts have strictly enforced hell or high water clauses in equipment lease agreements, holding that the lessor's breach is distinct from and irrelevant to lessee's duty to pay rent. *In re ICS Cybernetics, Inc.*, 123 B.R. 467 (Bkrtcy. N.D.N.Y.1990), *aff'd*, 123 B.R. 480 (N.D.N.Y.1990); *In re CLE Corporation*, 85–06877–SWC (N.D.Ga.1989); *Philadelphia Savings Fund Society*, 632 F.Supp. at 135; *Hassett*, 21 B.R. at 1006. This specialized body of computer leasing case law is in accord with Texas law. *See, Stewart v. United States Leasing Corp.*, 702 S.W.2d 288 (Tex.Ct.App.1985); *Southwest Park Outpatient Surgery Ltd. v. Chandler Leasing Division*, 572 S.W.2d 53 (Tex. Ct.App.1978). Moreover, in this case, Colorado Interstate explicitly agreed to the assignment knowing that under the master lease CIT had no obligation to perform CMI's contractual duties.

Colorado Interstate is not without a remedy, however. The hell or high water clause here only prevents Colorado Interstate from withholding or recouping rent as against CMI's assignee, CIT. Colorado Interstate can claim directly against CMI for breach of contract. *See*, R. Contino, *Legal Financial Aspects of Equipment Leasing Transactions*, 29 (1987). Furthermore, this clause is customary in the computer rental industry because it facilitates a lessor's financing for the initial purchase of equipment. *Hassett*, 21 B.R. at 1007.

Colorado Interstate, however, argues that the Electronic Data lease is a "prime lease" and the CMI lease is a "sub-lease." Colorado Interstate contends that when the prime lease terminated, the sublease automatically terminated as a matter of law.

■ Under Texas law, a sub-lessee loses only the right to *possession*, as against the original lessor, when the prime lease terminates or expires. *Rogers v. Burton*, 496 S.W.2d 673, 675 (Tex.Ct.App.1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974). This situation would arise when the sub-lease is for a term longer than the prime lease or when, as here, the prime lease terminates before the end of the sub-lease. A sub-lease, however, does not evaporate when the sub-lessee loses the right to possession. *Frankfurt v. Decker*, 180 S.W.2d 985 (Tex.Ct.App.1944). Similarly, although Colorado Interstate lost the right to possess the mainframe computer, as against Electronic Data, the contract with CMI did not terminate. That contract remains effective, defining the rights and remedies between the parties to it. *Id.* at 987. *See generally, Schneiker v. Gordon*, 732 P.2d 603 (Colo.1987).

Colorado Interstate also argues that CMI breached the covenant of quiet enjoyment. Even assuming that it did, the hell or high water clause still requires their payment of rent. If CMI or Electronic Data had in fact repossessed the computer equipment, under Texas law the continued obligation to pay rent is a penalty and would be unenforceable. *American Lease Plan v. Ben–Kro Corporation*, 508 S.W.2d 937, 943 (Tex.Ct.App.1974). Because the equipment was not repossessed here, however, the duty to pay rent did not terminate either with the termination of the prime lease or with the purported breach of the quiet enjoyment covenant.

Accordingly, IT IS ORDERED THAT:

(1) Defendant's motion for summary judgment is GRANTED;

(2) Plaintiffs' motion for summary judgment is DENIED;

(3) Final judgment shall enter in favor of defendant and against plaintiffs.