BENEDICTINE COLLEGE,
INC., Plaintiff,

v.

CENTURY OFFICE PRODUCTS, INC., Nodaway Valley Bank, General Electric Capital Corp., Defendants.

Civ. A. No. 92–2434–GTV.

United States District Court,
D. Kansas.

May 16, 1994.

Martin J. Asher, Duncan, Senecal, Bedner & Asher, Atchison, KS, for plaintiff.

Kenneth F. Crockett, Topeka, KS, for Century Office Products, Inc.

Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, KS, Mark A. Shaiken, Stinson, Mag & Fizzell, Lisa C. Creighton, Sprint Communications Co., L.P. Law Dept., Kansas City, MO, for Nodaway Valley Bank.

Dennis R. Dow, Todd Ruskamp, Timothy E. Congrove, Shook, Hardy & Bacon, Kansas City, MO, for GE Capital.

### *MEMORANDUM AND ORDER*

VAN BEBBER, District Judge.

This case is before the court on Defendant Nodaway Valley Bank's Motion for Summary Judgment (Doc. 18) and Defendant GE Capital Corporation's Motion for Summary Judgment (Doc. 45). Plaintiff Benedictine College has responded and opposes the motions. Defendant Century Office Products has not appeared in this action. For the reasons stated in this memorandum and order, the motions are granted.

This case involves Benedictine's claims that it is entitled to recision of two agreements for the lease of copying equipment entered into between Benedictine and defendant Century Office Products. Defendants Nodaway and GE Capital are the assignees of Century Office Products' rights under the two agreements and have asserted counterclaims against Benedictine for breach of the agreements.

In its motion for summary judgment, Nodaway argues that as a matter of law it is entitled to summary judgment on its counterclaim under the terms of the equipment lease. Benedictine argues in opposition that Nodaway is not entitled to summary judgment because genuine issues of material fact exist as to the applicability of its affirmative defenses to Nodaway's counterclaim. Similarly, GE Capital argues in its motion for summary judgment that it is entitled to summary judgment on its counterclaim for

breach of contract based upon a "hell or high water clause" in the agreement. Benedictine has also opposed this motion.

## I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The pertinent uncontroverted facts established by the parties in accordance with D.Kan. Rule 206(c) are as follows:[1]

Nodaway is a banking corporation duly organized and existing under the laws of Missouri, and it has its principal place of business in Missouri. Benedictine is a not-for-profit education corporation duly organized and existing under the laws of Kansas, and its has its principal place of business in Kansas. GE Capital is a foreign corporation doing business in the State of Kansas.

Century Office Products is a corporation organized under the laws of Kansas, and it has its principal place of business in Kansas. Century Office Products is currently in bankruptcy, having filed a Chapter 11 bankruptcy petition on October 1, 1992.

### Lease Assigned to Nodaway

On May 1, 1991, Benedictine entered into a lease purchase agreement with Century Office Products under which it was to receive thirteen Sharp and Toshiba duplicating machines in return for a promise to make sixty-one monthly payments in the amount of $1,600.00 each and a final payment in the amount of $10,466.64. One of the provisions of the agreement provided that Century Office Products could assign all of its rights under the contract and that such an assignment would be free from all defenses, set-offs, or counterclaims of any kind or character which Benedictine might have against Century Office Products.

On May 1, 1991, Benedictine executed a delivery and acceptance certificate for the copying equipment. Also on that same date, Century Office Products assigned all of its rights under the agreement to Mid–Continent Leasing. Subsequent to the May 1st assignment, Mid–Continent assigned its interest under the agreement to Nodaway.

Nodaway paid $76,807.76 for Mid–Continent's interest in the agreement. Nodaway asserts that it took the assignment in good faith and without any notice that the agreement had been dishonored, overdue, or that any defenses or claims to the agreement existed. On May 8, 1991, Benedictine was

---

**1.** The court notes that in its response Benedictine has failed to properly controvert any facts set forth by Nodaway in its motion for summary judgment and memorandum in support. Specifi-

cally, Benedictine has not set out the relevant portions of the record which it claims support its contravention of facts.

given written notice of the assignment to Nodaway which required that payments under the agreement be made directly to Nodaway.

From June, 1991, until October, 1992, Nodaway received monthly payments of $1,600.00 each from Benedictine as required under the terms of the agreement. Beginning in November, 1992, Benedictine stopped making the monthly payments to Nodaway. The agreement provides that the failure to make monthly payments constitutes a default, and upon default the remaining payments may be accelerated. The agreement also provides that upon default, interest at the rate of eighteen percent per year will be charged on the amount due and owing under the agreement and that Benedictine must pay reasonable attorney fees and costs expended in collecting amounts due under the terms of the agreement.

### Lease Assigned to GE Capital

On August 19, 1992, Benedictine executed another equipment lease with Century Office Products for certain office equipment described in it. Pursuant to the terms of the lease, Benedictine agreed to pay monthly payments in the amount of $1,850 for a total of sixty months. Paragraph three of the lease provides that "all of Lessee's obligations under this Lease shall be paid and performed by Lessee irrespective of any set-off, counterclaim, recoupment, defense or other right which Lessee may have against Lessor, the supplier of the equipment or any other person." Paragraph six of the lease further provides that "[n]o breach or default by Lessor hereunder shall excuse performance by Lessee of any provision hereof, it being understood that in the event of such default or breach by Lessor, Lessee shall pursue any rights on account hereof solely against Lessor and shall not assert against Holder any defense, counterclaim or setoff which Lessee may have against Lessor."

On August 21, 1992, and August 24, 1992, representatives of GE Capital contacted representatives of Benedictine and inquired whether Benedictine had received the equipment which was the subject of the Lease, and whether Benedictine understood the terms of the Lease.

On August 24, 1992, Century Office Products assigned to GE Capital all of its rights under the lease. In exchange for the assignment, GE Capital paid Century Office Products $83,146.00. Benedictine received notice of the assignment of the lease to GE Capital. Prior to the execution of the lease, Benedictine had no communications with GE Capital regarding any problems or complaints with Century Office Products.

Benedictine has not made any payments to GE Capital under the lease. On November 20, 1992, GE Capital provided notice of default to Benedictine.

In this lawsuit, Benedictine is seeking to rescind both lease agreements described above. Nodaway's counterclaim seeks payment of the accelerated amount of $77,666.64 due under the terms of the lease. GE Capital's counterclaim alleges that $128,150.37 is due under the terms of that lease.

## III. NODAWAY'S MOTION FOR SUMMARY JUDGMENT

The uncontroverted facts establish that Benedictine failed to make the payments due under its lease agreement beginning in November of 1991, and that the other events necessary to effectuate the agreement and its assignment to Nodaway have occurred. At issue here is whether Benedictine has alleged any affirmative defense that will operate to bar Nodaway's recovery on its claim for breach of contract. Nodaway contends that it is entitled to summary judgment on its counterclaim based on two alternative theories: First, Nodaway argues that the agreement is a negotiable instrument and that Nodaway is a holder in due course subject only to the defenses of lack of authority, illegality, and fraud in the essence. Second, Nodaway contends that under a waiver of defenses clause included in the terms of the agreement, it is accorded the same status as a holder in due course. The court considers Nodaway's second argument concerning the waiver of defenses clause dispositive and will address it here.

██ The construction of a written instrument and its legal effect are questions of law. *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co.*, No. 87–1022–C, 1990 WL 171010, *8 (D.Kan. Oct. 3, 1990) (citing *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988)). The enforceability of the waiver of defenses provision at issue here is governed by Section 9–206 of the Uniform Commercial Code, which provides that an agreement not to assert defenses against an assignee is enforceable by an assignee who takes the assignment for value, in good faith, and without notice of a claim or defense, except as to defenses that may be asserted against a holder in due course. K.S.A. § 84–9–206; Mo.Rev.Stat. § 400.9–206.[2] Section 9–102(2) states that Article Nine "applies to security interest created by contract, including ... lease[s] ... intended as security." In addition, the official comment to section 9–206 makes it clear that this particular provision of Article 9 applies to both leases intended as security and so-called "true leases." The comment text reads: "The same rules are made applicable to leases as to security agreements, whether or not the lease is intended as security." *See Washington Bank & Trust Co. v. Landis Corp.*, 112 Ill.App.3d 182, 67 Ill.Dec. 950, 951, 445 N.E.2d 430, 431 (1983).

One commentator described the ostensible conflict within Article Nine as follows:

> It might seem that because Article 9 applies only to secured transactions, section 9–206 applies only if the transaction between the buyer or lessee and the seller or lessor is a secured transaction. This confuses the finance transaction with the underlying lease or sale. Although section 9–206 governs a waiver made in the lease or sale agreement, the section only applies when the rights under this agreement have been assigned and the assignee as a secured party attempts to enforce the waiver against

the account debtor. See U.C.C. § 9–102(1)(a). Consequently, the courts have properly applied section 9–206(1) to validate and enforce waivers in true lease transactions. [citations omitted]

Boss, Amelia H., Lease Chattel Paper: Unitary Treatment of "Special" Kind of Commercial Specialty, 1983 Duke L.J. 69, 115 (1983).

Although plaintiff strenuously argues that the agreement at issue is a "true lease," it has set out no argument and cited no case law explaining why the waiver of defenses clause would be invalid if this agreement was deemed to be a "true lease." The court concludes that the waiver of defenses clause is enforceable if Nodaway meets the criteria set out in UCC section 9–206.

██ In order to determine whether Nodaway can enforce the waiver of defenses clause, the issues that the court must decide are whether Nodaway has taken the assignment for value, in good faith, and without notice of a claim or defense, and if so, whether Benedictine has asserted any of the defenses which might be asserted against a holder in due course. It is Nodaway's burden to show that it is entitled to holder in due course status. *See Kaw Valley State Bank & Trust Co. v. Riddle*, 219 Kan. 550, syl. 8, 549 P.2d 927 (1976). It is uncontroverted that Nodaway took the assignment for value when it paid $76,807.76. Benedictine argues, however, that Nodaway did not take the assignment in good faith and without notice of any claim.

██ First, Benedictine argues that Nodaway did not take "without notice" because there were financing statements filed with the Kansas Secretary of State by a Master Lease Corporation on May 5, 1989, and July 14, 1988, which included some of the same machines contained in the May 1, 1991, lease acquired by Nodaway, and which should have placed Nodaway on notice of competing

**2.** For convenience of reference, citations throughout section III of this memorandum and order are to the Uniform Commercial Code as adopted in both Kansas and Missouri. The court notes that among the parties a dispute exists concerning whether Kansas or Missouri provides the applicable law in the case. Missouri and Kansas have both adopted Article Nine of the UCC, so the choice of law issue is irrelevant to the determination of the issues present in section III of this memorandum and order. The choice of law issue is addressed in section IV of this order.

claims or security interests in the machines covered by the lease. Nodaway was not actually aware of the financing statements and apparently did not perform any search for such financing statements.

Under section 1–201(25) of the UCC, notice is defined as follows:

> (25) A person has "notice" of a fact when
>
> (a) he has actual knowledge of it; or
>
> (b) he has received a notice or notification of it; or
>
> (c) from all of the facts and circumstances known to him at the time in question he has reason to know that it exists. A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. . . .

K.S.A. § 84–1–201(25); Mo.Rev.Stat. § 400.1–201(25). There has been no allegation that Nodaway had any type of actual knowledge or notice regarding a claim or defense affecting the lease agreement or the equipment covered by the lease. The only issue for the court to decide is under section 1–201(25)(c), that is to say, whether from all of the facts and circumstances known to Nodaway at the time it took assignment of the lease, Nodaway had reason to know that a claim or defense existed. It is Benedictine's position that the existence of the previously filed financing statements should have given Nodaway such a "reason to know."

█ The parties have cited no cases on this issue and the court is unable to find any cases addressing the exact issue of whether a previously filed but undiscovered financing statement acts as notice to an assignee and precludes the enforceability of a 9–206 waiver provision. However, the court concludes that the intent of UCC section 9–206 is to consider an assignee of a lease agreement or security interest in the same light as a holder in due course of a negotiable instrument. Thus, if an assignee of a lease agreement must meet the same criteria as a holder in due course in order to enforce a waiver of defenses clause, it stands to reason that the same notice standards applied to determine whether an entity is a holder in due course should be applied to determine whether an assignee of an agreement is entitled to enforce a waiver of defenses provision.

There are a number of UCC cases which hold that the filing of a financing statement is insufficient to defeat the "without notice" requisite of a holder in due course. *See, e.g., Saloga v. Central Kansas Credit Union,* 245 Kan. 668, 671–72, 783 P.2d 339 (1989); *Dallas Bank & Trust Co. v. Frigiking, Inc.,* 692 S.W.2d 163, 166 (Tex.Ct.App.1985). Similarly, the court notes that UCC § 3–304(5) provides that the "filing or recording of a document does not of itself constitutes notice within the provisions of this article to a person who would otherwise be a holder in due course." K.S.A. § 84–3–304(5); Mo.Rev. Stat. § 400.3–304(5). Further, in *Kaw Valley,* the Kansas Supreme Court discussed in detail the type of notice described in UCC § 1–201(25)(c) as "reason to know." 219 Kan. at 556–58, 549 P.2d 927. The *Kaw Valley* court noted that the cases holding that an entity had reason to know of a defense or claim fall into four categories: (1) cases where the holder has prior or contemporaneous notice of a defense; (2) cases in which the defense appears in an accompanying document delivered to the holder; (3) cases in which written information in the instrument indicates the existence of a defense; and (4) cases where a holder is prevented from assuming holder in due course status due to the holder's close connection with the transferor of the instrument. *Id.* at 557–58, 549 P.2d 927. None of these categories would cover an entity's failure to discover a previously filed financing statement.[3] Standing alone, the mere existence of a financing statement on some of the equipment covered in the lease does not constitute notice or reason to know for purposes of section 9–206.

---

3. The court notes that Missouri has taken an even narrower view of the "reason to know" type of notice, holding that nothing short of actual knowledge or bad faith will defeat the title of a holder in due course, although actual knowledge may be inferred from facts and circumstances surrounding the acquisition of an instrument but not from circumstances which would merely put a reasonably prudent person on inquiry. *Mid–Continent Nat'l Bank v. Bank of Independence,* 523 S.W.2d 569, 573–74 (Mo.Ct.App.1975) (citations omitted).

■ In its next argument, Benedictine states that Nodaway did not contact anyone at the college to determine if the copying machines had been received, and did not make any inquiry into the arrangements made for service and supplies. Benedictine does not offer any argument to the court as to how or why this inaction would have put Nodaway on notice of any claim or defense, particularly when it is uncontroverted that Benedictine had previously executed a Delivery and Acceptance Certificate which evidenced its acceptance of the copying equipment.

Benedictine also argues that some paperwork and a copy of a check received by Nodaway from its assignor Mid Continent Leasing include a "memo notation" to Benedictine College and Hallmark Cards, and that this should have put Nodaway on notice that Mid Continent Leasing did not have full title to the copying equipment. Benedictine further reiterates its argument that some of the machines referenced in this paperwork were included in the 1988 and 1989 financing statements. Again, Benedictine offers no explanation as to how or why this paperwork would have revealed or implied the existence of any defense. The court is unable to understand Benedictine's argument, and without more explanation, the court simply cannot determine the relevance of the paperwork from Mid Continent Leasing or how it might have put Nodaway on notice of anything.

Finally, Benedictine argues that Nodaway lacks the necessary good faith to enforce the waiver of defenses clause pursuant to 9–206. Good faith is defined under the UCC as "honesty in fact in the conduct or transacting concerned." K.S.A. § 84–1–201(19); Mo. Rev.Stat. § 400.1–201(19). Benedictine argues that issues of fact exist concerning whether Nodaway is so "closely connected" to Century Office Products or Mid Continent Leasing that either could be considered the agent of Nodaway. The so-called "close connection" doctrine has been applied by courts to "deny holder in due course status to a

noteholder who was involved in or intimately connected with the sale or transaction which generated the note; having taken part in the original transaction with the borrower the noteholder cannot thereafter stand aloof as a holder in due course and in good faith." *CAT Aircraft,* 1990 WL 171010 at \*10 (quoting *Slaughter v. Jefferson Federal Sav. & Loan Ass'n,* 538 F.2d 397, 400 (D.C.Cir. 1976)).

■ Generally, the issue of a close connection between two entities is a question of fact. *Id.* Here, however, Benedictine premises its close connection argument solely on a statement that Nodaway took assignment of eighteen leases originated by Century Office Products over a one year period.[4] Benedictine has pointed to no genuine issue of material fact concerning a relationship between Nodaway and Century Office Products beyond the bald statement concerning the number of lease assignments taken, and has failed to support its contention that Nodaway took eighteen leases with reference to any portion of the record in this case. There is no evidence whatsoever that Nodaway worked closely with Century Office Products, that the corporations were tied together in any way, that Nodaway helped set Century Office Products' policies, or that Nodaway had any voice in Century Office Products' equipment lease transactions. *See Kaw Valley,* 219 Kan. at 559–560, 549 P.2d 927 (discussing circumstances where close connection doctrine would apply to prevent holder in due course status). Even assuming that Nodaway did take eighteen lease assignments from Century Office Products, the discussion in *Kaw Valley* demonstrates that this alone would be insufficient to establish a genuine issue of material fact concerning a "close connection" between Nodaway and Century Office Products which would preclude summary judgment.

■ In light of the court's foregoing conclusions that no genuine issues of fact exist concerning Nodaway's having taken for value, without notice of any claim or defense,

---

4. The court notes that although Benedictine's brief refers to Nodaway's Interrogatory answers as support for the fact that Nodaway was assigned 18 leases from Century Office Products, Benedictine neglected to attach the Interrogatory answers to the brief. This is not in compliance with D.Kan.Rule 206.

and in good faith, Nodaway is entitled to enforce the waiver of defenses clause that Benedictine's lease agreement as a matter of law. The only defenses that may be asserted against Nodaway are those "real" defenses which may be asserted against a holder in due course. K.S.A. § 84–9–206; Mo.Rev. Stat. § 400.9–206. Those defenses include infancy, incapacity, duress, illegality, fraud in the essence, and discharge in insolvency proceedings. K.S.A. § 84–3–305(2); Mo.Rev. Stat. § 400.3–305(2). Benedictine has asserted no such defense here, but has asserted only the defenses of breach of contract and failure of consideration.

## IV. NODAWAY'S ENTITLEMENT TO REASONABLE ATTORNEY'S FEES

In addition to recovering the amount due and owing from Benedictine under the lease agreement, Nodaway seeks eighteen percent interest on that amount from the date of default and an award of reasonable attorney's fees and costs incurred in collecting that amount under the terms of the lease agreement. In response, Benedictine argues that the attorney's fee provision is expressly prohibited by Kansas law. See K.S.A. § 58–2312. In reply, Nodaway argues that Missouri law applies pursuant to the choice of law provision in the lease agreement.

Because this court is acting upon diversity jurisdiction, it must apply the choice of law rules of the forum state, Kansas. Klaxon Co. v. Stentor Elec. Manuf. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Section 1–105 of the UCC, as adopted in Kansas, recognizes that parties may agree for the law of another state to govern their rights and duties so long as the transaction at issue has a reasonable relation to that state. K.S.A. § 84–1–105(1). See National Equip. Rental, Ltd. v. Taylor, 225 Kan. 58, 60–61, 587 P.2d 870 (1978). Here, Missouri law is chosen pursuant to a provision in the agreement. Both parties to the agreement are Kansas entities, the agreement was executed in Kansas, and the equipment covered in the agreement was located in Kansas. Missouri does have some relationship to the transaction because at the time the agreement was made, Century Office Products had a St. Joseph, Missouri, office. Additionally, both assignees of the contract—Mid–Continent Leasing and Nodaway—were Missouri entities. Benedictine made its payments to Nodaway in Missouri for over one year.

The court is persuaded that Missouri does have a reasonable relation to the transaction such that the parties' choice of Missouri law should not be overridden. The Comment to UCC § 1–105 addresses the "reasonable relation" requirement as follows:

> Ordinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs. But an agreement as to choice of law may sometimes take effect as a shorthand expression of the intent of the parties as to matters governed by their agreement, even though the transaction has no significant contact with the jurisdiction chosen.

Comment to K.S.A. § 84–1–105 (citing Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927)).

The court agrees with the argument made by Nodaway that the choice of Missouri law may reflect the parties realization that financing agreements of this type are usually assigned to banks or other financial institutions, and that Century Office Products may have been contemplating the assignment to a Missouri assignee. Although Kansas may have a stronger connection to the agreement at issue in this case, the court cannot say that Missouri did not have at least a reasonable relation to it. The parties' choice of Missouri law must be allowed to stand and Nodaway is entitled to reasonable attorney's fees under the terms of the agreement at issue here.

## V. GE CAPITAL'S MOTION FOR SUMMARY JUDGMENT

Defendant GE Capital contends that it is entitled to summary judgment as a matter of law on its counterclaim based upon two alternative grounds. First, GE Capital argues that a "hell or high water" clause included in the terms of the lease agreement executed by Benedictine and assigned to GE Capital is enforceable and precludes all defenses by

Benedictine. Second, GE Capital argues that a waiver of defenses clause similar to the one previously described in this memorandum and order operates to cut off all affirmative defenses asserted by Benedictine.

■ The clause referred to as a "hell or high water" clause is set forth at paragraph three of the lease and reads as follows:

DELIVERY AND ACCEPTANCE: Upon delivery of the Equipment to the location set forth above, Lessee shall inspect the Equipment and if found acceptable shall accept the Equipment on the date it is installed and ready for use. Lessee's acceptance of the Equipment shall be conclusively and irrevocably evidence by Lessee signing the Certificate of Acceptance to this Lease and upon acceptance, THIS LEASE SHALL BE NON–CANCELABLE FOR THE FULL LEASE TERM and Lessee's obligation hereunder shall not abate by reason of Lessor's taking of possession of the Equipment or for any other reason. This Lease is a net lease and all of Lessee's obligations under this Lease shall be paid and performed by Lessee irrespective of any setoff, counterclaim, recoupment, defense or other right which Lessee may have against Lessor, the supplier of the equipment or any other person. If Lessee cancels or terminates this Lease prior to delivery or refuses to sign the Certificate of Acceptance within a reasonable time, not to exceed ten (10) days, after the Equipment has been delivered, tested and ready for use, in which event Lessee shall be deemed automatically assume [sic] all of Lessor's obligations under any purchase agreement for the Equipment and Lessee agrees to indemnify and defend Lessor from any claims, including any demand for payment of the purchase price of the Equipment by the manufacturer or vendor of the Equipment.

Under a "hell or high water" provision such as this, a lessee is required unconditionally to pay the full rent when due, and irrespective of any claim against the lessor of the equipment.

"Hell or high water" provisions are common in equipment lease financing instruments, and absent unequal bargaining power or unconscionability such provisions have been uniformly enforced by the courts. *Colorado Interstate Corp. v. CIT Group/Equip. Financing Inc.*, 775 F.Supp. 369, 371 (D.Col. 1991) (citing *In re ICS Cybernetics, Inc.*, 123 B.R. 467 (N.D.N.Y.), *aff'd*, 123 B.R. 480 (N.D.N.Y.1990); *In re CLE Corp.*, 85–06877–SWC (N.D.Ga.1989); *Philadelphia Sav. Fund Society v. Deseret Management Corp.*, 632 F.Supp. 129, 135 (E.D.Pa.1985); *West Virginia v. Hassett (In re O.P.M. Leasing Servs.)*, 21 B.R. 993, 1006 (S.D.N.Y.1982)), *aff'd*, 993 F.2d 743 (10th Cir.1993); *American Computer v. Jack Farrell Implement*, 763 F.Supp. 1473, 1484 n. 9 (D.Minn.1991), *aff'd*, 967 F.2d 1208 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992).

In *Colorado Interstate*, the Court of Appeals for the Tenth Circuit recognized that in agreeing to a lease agreement that contained a "hell or high water clause," a lessee "agreed to continue making rent payments despite any claim it might have against [the lessor]. Colorado Interstate's sole remedy was limited to bringing an action against [the lessor] while continuing to make rent payments." 993 F.2d at 747. The Tenth Circuit acknowledged that the policy reason behind a "hell or high water" provision is to enable the parties to obtain financing that would not otherwise be available. *Id.* at 749. *Colorado Interstate* was factually similar to the case at hand in that the plaintiff was faced with double liability for leased computer equipment.

■ In its response to GE Capital's motion, Benedictine acknowledges the consistent manner in which courts of various jurisdictions have enforced "hell or high water" clauses. However, plaintiff argues that the present case may be distinguished from others based upon some notice that GE Capital allegedly had concerning a competing interest in the property included in the lease. Benedictine has cited no authority for its proposition that the enforceability of a "hell or high water" clause is subject to any sort of notice standard, but merely asks to court to reject the reasoning behind cases such as *West Virginia v. Hassett (In re O.P.M. Leasing Servs.)*, 21 B.R. 993, 1006 (S.D.N.Y.1982),

*aff'd*, 993 F.2d 743 (10th Cir.1993). In *Hassett*, the court rejected a lessee's challenge to the enforceability of a lease on the grounds that the assignee took the assignment in bad faith because the assignee actually knew of the original lessor's default in failing to provide required maintenance. *Id.* at 1008.

The court disagrees with plaintiff's argument that the enforceability of a "hell or high water" clause should depend upon the assignee's notice of any claim or defense. To hold otherwise would undermine the purposes behind a "hell or high water clause" and make it operate simply as a waiver of defenses provision as discussed in section III of this order. Moreover, there is no authority the position advanced by Benedictine.

 Based upon the uniform enforcement of "hell or high water clauses" by other courts, and because there has been no allegation that the clause is unconscionable or that there was unequal bargaining power between Benedictine and Century Office Products at the time the lease was negotiated, the court concludes that the provision is enforceable here and that GE Capital is entitled to summary judgment on its counterclaim for breach of the lease. Benedictine's remedy is limited to pursuing its claims against Century Office Products in bankruptcy.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant Nodaway Valley Bank's Motion for Summary Judgment on its Counterclaim (Doc. 18) is granted. Counsel for Nodaway Valley Bank is directed to prepare and submit a Journal Entry of Judgment consistent with this memorandum and order. Counsel shall comply with D.Kan. Rule 220 concerning its award of reasonable attorney's fees.

IT IS FURTHER ORDERED that Defendant GE Capital Corporation's Motion for Summary Judgment on its Counterclaim (Doc. 45) is granted. Counsel for GE Capital Corporation is directed to prepare and submit a Journal Entry of Judgment consistent with this memorandum and order.

IT IS FURTHER ORDERED that Plaintiff's Motion for Continuance of Trial (Doc.

67) is denied as moot, there being no issues remaining for trial.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**